RENDERED: MAY 19, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1221-WC

COLUMBUS STEEL ERECTORS INC.                           APPELLANT


PETITION FOR REVIEW OF A DECISION
v.        OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-20-91668


GEORGE MARSHALL; HONORABLE
PETER J. NAAKE,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION                              APPELLEES
BOARD


OPINION
AFFIRMING IN PART
AND REVERSING IN PART

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND GOODWINE,
JUDGES.

CALDWELL, JUDGE: Columbus Steel Erectors, Inc. (Columbus) petitions for

review of an opinion of the Workers' Compensation Board (the Board) affirming

an award of benefits, but also remanding to the Administrative Law Judge (ALJ) to

enter an amended order to resolve an alleged hip injury. We affirm the Board's affirmation of the award, but we reverse its remand concerning hip issues. The Board should have simply affirmed the ALJ's decision. The ALJ's decision must be reinstated.

**FACTS**

George Marshall (Marshall) filed a claim alleging work-related injury to various body parts stemming from a fall on or about February 11, 2020. Following the presentation of evidence, the ALJ determined that Marshall was entitled to permanent partial disability (PPD) income benefits and medical benefits for right elbow/wrist, and low back injuries[1] in an April 2022 Opinion, Order, and Award (ALJ decision).

Among the medical evidence considered by the ALJ were reports by Dr. Ellen Ballard and Dr. Jeffrey Fadel. The ALJ found Dr. Fadel's opinion more persuasive than that of Dr. Ballard. Unlike Dr. Fadel, Dr. Ballad concluded there was no permanent impairment from any work-related injury.

Columbus filed a petition for reconsideration, arguing that Dr. Fadel's impairment ratings for the elbow and low back were problematic and should be disregarded. Marshall filed a response to Columbus' petition. But Marshall did

---

[1] The ALJ also awarded Marshall temporary total disability (TTD) benefits for the period between the February 2020 work injury and June 17, 2021.

not file a petition for reconsideration himself. The ALJ denied Columbus' petition for reconsideration, noting his limited scope of authority on reconsideration. *See* KRS[2] 342.281 ("The administrative law judge shall be limited in the review to the correction of errors patently appearing upon the face of the award, order, or decision" when faced with a petition for reconsideration.).

Columbus filed an appeal with the Board. The Board affirmed the ALJ's decision. But it also remanded to the ALJ to enter an amended order to resolve Marshall's allegation of a work-related right hip injury which, in the Board's view, was noted in ALJ's decision but not fully resolved by it.

Columbus filed a petition for our review of the Board's opinion. It contends this Court should reverse the Board's affirmation of the ALJ's decision and remand to the ALJ to enter an order adopting a 0% impairment rating based on Dr. Ballard's report. It also argues that the Board erred in remanding to the ALJ to resolve hip injury issues not raised upon reconsideration to the ALJ or upon appeal to the Board. Further facts will be discussed as we consider these arguments.

## ANALYSIS

### Standard of Review

"This Court's standard of review in workers' compensation appeals is well-settled in the Commonwealth." *Roberts v. Commonwealth Dodge*, 644

---

[2] Kentucky Revised Statutes.

S.W.3d 543, 544 (Ky. App. 2022). Our task is to review the Board's opinions and "to correct the Board only where [the] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id*. (quoting *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)).

Columbus' petition for review first challenges the Board's affirmance of the ALJ's award of PPD benefits.[3] The amount of PPD benefits is calculated based on factors including "the permanent impairment rating caused by the injury[.]" KRS 342.730(1)(b). *Permanent impairment rating* means "percentage of whole body impairment caused by the injury or occupational disease as determined by the [American Medical Association] Guides to the Evaluation of Permanent Impairment[.]" KRS 342.0011(35) (internal quotation marks omitted).

## I.     No Reversible Error in Board's Affirming ALJ's Award of PPD Which Was Based on Dr. Fadel's Opinion

Columbus first argues that the Board erred in affirming the ALJ's award of PPD benefits because, in its view, the ALJ improperly relied on Dr. Fadel's opinion rather than Dr. Ballard's opinion in determining Marshall's permanent impairment rating.

---

[3] The petition for review does not clearly and explicitly raise any issues challenging the Board's affirmance of the ALJ's award of temporary total disability benefits or medical expenses.

Dr. Fadel conducted an independent medical examination (IME) of Marshall on June 17, 2021. Dr. Fadel made the following statement about the low back condition:

> The lumbar spine pathology found with digital imaging will also be rated at this time, despite the fact that injection therapy has not been completed and therefore, in my view, MMI [maximum medical improvement] in its regard has yet to be met. This is being calculated at this examination assuming that no further treatment is anticipated.

(Administrative Record (AR), p. 199.) Fadel also stated in his conclusions and recommendations: "Mr. Marshall has reached maximum medical improvement as of this examination, again if no further treatment is anticipated." (AR, p. 200).

Columbus contends the ALJ improperly relied on Dr. Fadel's assessment of impairment from the low back condition since Dr. Fadel issued a conditional impairment rating for the low back that was not based on Marshall being at MMI. And it further asserts that all conditions from a work injury must be at MMI for a physician's whole person impairment rating to be valid.

Columbus points out that Dr. Fadel's impairment rating related to the low back is based on Marshall's condition at the time of examination. And according to Columbus, Dr. Fadel stated that further improvement could be expected if Marshall received injection therapy.

According to the summary of evidence in the ALJ decision, Dr. Fadel "stated injection therapy has yet to be completed for the lumbar spine and MMI had not yet been met. A lumbar impairment would be given on the assumption that no further treatment was anticipated." The ALJ also noted in findings of fact and conclusions of law that two years had passed since the accident, and that Columbus refused to pay for treatment for Marshall's low back.

The ALJ emphasized Dr. Fadel's statement opining Marshall was at MMI if no additional treatment would be provided. And based on Columbus' refusal to authorize the injection therapy, the ALJ deemed it appropriate to infer or assume that Marshall was at MMI for his low back condition. The ALJ also cited authority indicating that a need for additional treatment did not necessarily preclude a finding of MMI. *See Miller v. Go Hire Employment Development, Inc.*, 473 S.W.3d 621, 632 (Ky. App. 2015); *Tokico (USA), Inc. v. Kelly*, 281 S.W.3d 771, 776 (Ky. 2009).

In taking note of Dr. Fadel's statements about whether Marshall was at MMI, the ALJ perhaps recognized that Dr. Fadel's report may in some ways appear internally inconsistent on this issue. An ALJ has the sole discretion to resolve conflicts in the evidence and to draw reasonable inferences from the evidence and to believe or reject parts of the evidence regardless of whether it comes from the same witness. *Miller*, 473 S.W.3d at 629.

The Board may not substitute its judgment for that of the ALJ on the weighing of the evidence. But it does conduct a limited review to determine if findings are supported by substantial evidence or if the ALJ's decision should be disturbed as clearly erroneous, an abuse of discretion, outside the ALJ's powers, or resulting from fraud or lack of compliance with KRS Chapter 342's requirements. *Dreisbach Wholesale Florists, Inc. v. Leitner*, 655 S.W.3d 763, 767 (Ky. App. 2022) (citing KRS 342.285(2); *Western Baptist*, 827 S.W.2d at 687).

In affirming the ALJ, the Board noted similarities between the present case and *Miller*, 473 S.W.3d at 621. Specifically, the doctor's opinions relied on by the ALJ in both cases contained similar language – stating a condition was at MMI assuming no further treatment would be provided. *See id*. at 626. So, as in *Miller*, the Board concluded the ALJ could reasonably infer that Marshall was at MMI because he had not received the treatment upon which the physician's opinion was contingent. *See id*. at 633. Deferring to the ALJ's authority to weigh the evidence, the Board's opinion also concluded that the ALJ provided an "adequate rationale" and that Dr. Fadel's impairment rating complied with AMA guidelines.

The Board rejected Columbus' argument that this case is distinguishable based on "certainty" in Dr. Fadel's opinion about Marshall's low back condition not being at MMI. Instead, the Board construed Dr. Fadel's

opinion regarding whether the low back condition was at MMI as "fully contingent" on receiving treatment which Marshall did not receive (the injection therapy). And the Board concluded similar inferences could be made in this case as in *Miller* and *Tokico* and that both those cited cases supported the ALJ's reliance on Dr. Fadel's low back impairment rating.

Columbus contends that the Board misconstrued *Miller* and *Tokico* and points out both cases quoted *W.L. Harper Construction Co. v. Baker*, 858 S.W.2d 202, 204 (Ky. App. 1993) (involving issues about temporary total disability under former statutes).[4] Columbus argues that *Baker* distinguishes between future treatment that would improve a medical condition and future treatment needed only for symptom maintenance such as pain medicine or physical therapy. It also argues that despite the Board's noting the ALJ did not rely on *Baker*, the Board failed to fully analyze *Baker* or the context of precedent. And it alludes to *Baker*'s statement that "just because some treatment is still necessary, such as drug treatment or physical therapy, does not preclude a finding that the condition is stabilized if the underlying condition causing the disability has become stable and no additional treatment will improve the condition." *Id*.

---

[4] As noted by our Supreme Court in an unpublished opinion, KRS Chapter 342 did not define the term *temporary total disability* or TTD at the time *Baker* was rendered, but such a definition was later provided under the 1996 amendments to KRS Chapter 342 and included a requirement that the claimant had not reached MMI. *Sights Denim Systems v. Debortoli*, No. 2003-SC-0239-WC, 2004 WL 868588, at *3-4 (Ky. Apr. 22, 2004).

In its petition for review, Columbus asserts that the Board's opinion failed to take note that the physician opinion at issue in *Miller* "could be construed by the ALJ to be referencing only maintenance treatment instead of treatment that would improve the claimant's condition." Furthermore, it argues that *Miller* is distinguishable because the physician opinion at issue there alluded only to unspecified treatment – which might have only included pain medicine – rather than the specific treatment recommended by Dr. Fadel here (injection therapy). And it argues that *Miller* does not indicate physicians could assign impairment ratings when additional treatment would improve the claimant's condition.

But Columbus fails to point to any actual language in Dr. Fadel's report stating that injection therapy would actually improve the low back condition, such as repairing the herniated disc which Dr. Fadel found to exist. And perhaps Dr. Fadel's report could be reasonably construed as indicating that the injection therapy was for pain or symptom management rather than actually changing a medical condition. For example, Dr. Fadel's report takes note injection therapy was recommended by a pain management physician and would be administered by an interventional pain management physician.

We recognize that the ALJ and Board may not have explicitly discussed whether the injection therapy appeared to be merely for pain and symptom management in the manner we have discussed. Nonetheless, this factor

indicates to us that the Board's assessment of the evidence as supporting the ALJ's reliance on Dr. Fadel's report does not amount to flagrant error resulting in gross injustice. *See Roberts*, 644 S.W.3d at 544.

Furthermore, contrary to Columbus' arguments, we do not perceive that the Board ignored or misconstrued controlling authority. *See id.* Despite Columbus' arguments that the dissent in *Miller* advocates for a better approach,[5] a dissenting opinion is not binding authority. And despite any faults Columbus finds with the majority opinion in *Miller*, *Miller* states a principle recognized in precedent from our Supreme Court – which we lack authority to overrule under SCR[6] 1.030(8)(a). 473 S.W.3d at 632 ("The need for additional treatment does not preclude a finding that a worker is at MMI.") (quoting *Tokico*, 281 S.W.3d at 776).

---

[5] Judge Kramer's dissent asserted that whether a claimant had reached MMI did not depend on whether the employer had volunteered to pay for treatment which would improve a medical condition and that it was improper to rely on a physician's conditional impairment rating. And the dissent further stated:

> If Miller wished to obligate her employer to pay for the medical treatment she needed in order to reach MMI and secure a valid WPI rating for the purpose of receiving PPD, her proper course of action would have been to have sought an interlocutory determination of her employer's liability and an interlocutory award of medical benefits. If successful, she could have then held her claim in abeyance until she achieved MMI. But having submitted her claim for final adjudication based solely upon Dr. Hughes' invalid WPI rating, her evidence, such as it was, simply could not have supported an award of PPD.

*Miller*, 473 S.W.3d at 636 (Kramer, J., dissenting) (citation omitted).

[6] Rules of the Supreme Court.

(*Miller* also notes that *Tokico* cited *Baker*, 858 S.W.2d at 204 for the quoted statement. *See* 473 S.W.3d at 632.)

Despite any factual distinctions with the case at hand (such as the claimant in *Tokico* actually receiving the recommended treatment), our Supreme Court expressly stated in *Tokico* that the need for further treatment did not preclude a finding of MMI. 281 S.W.3d at 776. And it affirmed the Board's affirmance of the ALJ's resolution of conflicting medical evidence as it rejected arguments that the ALJ was compelled to believe one physician over another. *Id.* Likewise, the Board here properly affirmed the ALJ's resolution of conflicting medical evidence – including possible inconsistencies in the language of Dr. Fadel's report.

In sum, the Board properly deferred to the ALJ's weighing of conflicting medical evidence and there is no reason for us to correct its affirmation of the ALJ's award of PPD benefits based on Dr. Fadel's report. However, we agree with Columbus that the remand to resolve hip injury issues must be reversed.

## II. Remand to Discuss Hip Issues Must be Reversed

Columbus points out Marshall did not preserve any issues about an alleged hip injury through filing a petition for reconsideration, appeal or cross-appeal. It also argues the Board erred in *sua sponte* remanding for resolution of an unpreserved issue of fact. And it contends the ALJ's "stated considerations regarding Dr. Freedberg ruling out a right hip injury are sufficient to dispense with

-11-

that aspect of the claim in any event." Marshall does not substantively respond to these arguments about the alleged impropriety of the remand in his brief, although he generally urges this Court to affirm the Board's opinion and remand for further proceedings.

Though we need not resolve whether the Board may ever properly remand for further findings on issues not raised by parties on reconsideration or appeal,[7] here we agree with Columbus. The remand for further discussion of hip issues was improper and must be reversed based on the record and applicable law.

---

[7] Kentucky appellate precedent concerning whether one must file a petition for reconsideration of initial decisions in Workers' Compensation cases to preserve certain types of errors for appeal has changed over the years in response to amendments to KRS 342.281 as described by our Supreme Court:

In *Eaton Axle Corp. v. Nally*, Ky., 688 S.W.2d 334 (1985), and in *Osborne v. Pepsi Cola*, Ky., 816 S.W.2d 643 (1991), we held that patent errors in an ALJ's opinion and award are unpreserved for appeal if not asserted in a petition for reconsideration. However, those cases involved errors of fact, not law, and turned on the language of KRS 342.285(1), *viz*:

An award or order of the administrative law judge as provided in KRS 342.275, if petition for reconsideration is not filed as provided for in KRS 342.281, shall be conclusive and binding as to all questions of fact.

The error in *Eaton Axle* was the Board's failure to make findings of fact with respect to the issue of notice. *Eaton Axle*, 688 S.W.2d at 337. The error in *Osborne* was the ALJ's finding that the injury was not work related despite a stipulation by the parties to the contrary. *Osborne*, 816 S.W.2d at 644.

*Smith v. Dixie Fuel Co.*, Ky., 900 S.W.2d 609 (1995), suggested that *Eaton Axle* and *Osborne* might apply to an erroneous calculation of an award as occurred here. *Id.* at 610. However, *Dixie Fuel* turned on a 1994 amendment of KRS 342.281 that added the following sentence: "The failure to file a petition for reconsideration shall not preclude an appeal on any issue." 1994 Ky. Acts, ch.

KRS 342.285(1) states the ALJ's factual findings are "conclusive and binding" unless a petition for reconsideration is filed.

KRS 342.285(2) provides the Board shall not substitute its judgment on the ALJ's weighing of evidence on factual issues but shall conduct a limited review to decide whether the ALJ's decision must be disturbed based on specific grounds including acting outside the ALJ's authority, fraud, lack of compliance with KRS Chapter 342, clear error based on the evidence in the record, or abuse of discretion.

KRS 342.285(3) provides the Board shall "enter its decision affirming, modifying, or setting aside the order, decision, or award, or *in its discretion* remanding the claim to the administrative law judge for further

181, Part 14, § 75. That sentence was deleted after *Dixie Fuel* was rendered. 1996 Ky. Acts (1st Ex.Sess.), ch. 1, § 14. Thus, *Dixie Fuel* cannot be cited for the proposition that a patent error of law not presented in a petition for reconsideration is unpreserved for appellate review.

*Brown v. Cabinet for Families and Children*, No. 2003-SC-0449-WC, 2004 WL 2913233, at *2-3 (Ky. Dec. 16, 2004).

We recognize this unpublished opinion is not binding authority. *See* Kentucky Rules of Appellate Procedure (RAP) 41(A); former Kentucky Rules of Civil Procedure (CR) 76.28(4)(c). However, our Supreme Court's summary of prior changes in precedent and in KRS 342.281 in *Brown* is accurate and does not appear to have been duplicated in published precedent.

The current version of KRS 342.281 does not explicitly state whether the failure to file a petition for reconsideration precludes appeal on any issues.

-13-

proceedings in conformity with the direction of the board." (Emphasis added.) Alternatively, "the board *may*, before decision and upon a sufficient showing of fact, remand the claim to the administrative law judge." KRS 342.285(3). (Emphasis added.)

Obviously, some degree of discretion in the Board's power to remand is explicitly recognized in KRS 342.285(3). But our Supreme Court has recognized that the Board's discretion to remand is not unlimited:

> If the ALJ has made all necessary findings to resolve the issue at hand and the Board has erred in remanding for additional, unneeded findings that would be of no additional value in resolving the issues in the case, if for no other reason than judicial economy alone, that decision, just as any other, is subject to review and reversal by the appellate courts.

*Tryon Trucking, Inc. v. Medlin*, 586 S.W.3d 233, 238 (Ky. 2019).

"[T]he Board should have wide latitude and deference in whether to remand a particular issue to the ALJ for additional findings and analysis" but the Board does not have "absolute discretion" to remand. *Id.* So, like other workers' compensation issues, a reviewing court must "assess the Board's decision to remand based upon whether it has 'overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice.'" *Id.* (quoting *Western Baptist*, 827 S.W.2d at 687-88).

-14-

Under the circumstances presented here, we conclude that the Board overlooked or misconstrued controlling authority in ordering the remand for further findings on an issue not raised in reconsideration proceedings or on appeal. Furthermore, the Board remanded for further findings which were unnecessary for resolving the issues before it. Thus, we must correct the Board by reversing the remand for further discussion of hip issues. *See Medlin*, 586 S.W.3d at 238.

Any issues about the existence or extent of a work-related hip injury appear to be primarily factual issues. And clearly the Board remanded to the ALJ to issue an amended order based on the Board's *sua sponte* determination that the ALJ had failed to make essential findings concerning the existence or extent of any work-related hip injury.

Though one does not have to file a petition for reconsideration to preserve issues of law,[8] any failure to make essential findings on a factual issue is a patent error and must be brought to the ALJ's attention through a petition for reconsideration to properly preserve this issue. *See Anderson v. Mountain Comprehensive Health Corporation*, 628 S.W.3d 10, 16-17 (Ky. 2021) (recognizing that a "petition for reconsideration is required where the ALJ fails to

---

[8] "Pursuant to our interpretation of KRS 342.285 and the plain language contained therein, issues regarding questions of law need not be preserved pursuant to a petition for reconsideration, but rather, may be appealed directly to the Board." *Brasch-Barry General Contractors v. Jones*, 175 S.W.3d 81, 83 (Ky. 2005).

make an essential finding of fact, and in such reconsideration, the ALJ is limited to review of errors patently appearing upon the face of the award, order, or decision" though determining that the ALJ had not failed to make essential findings of fact in that case and that the alleged error was not patently obvious based on the record). *See also Wilkerson v. Kimball International, Inc.*, 585 S.W.3d 231, 236-37 (Ky. 2019).

To the extent that the ALJ's discussion of hip issues did not provide essential findings of fact, we agree with Columbus that this issue was not preserved since Marshall did not file a petition for reconsideration. And as Columbus alternatively argues, the ALJ's discussion of hip issues – albeit limited – could also be construed as finding no work-related hip injury based on the medical evidence. Marshall does not explicitly dispute this in his brief.

The ALJ's summary of evidence discussed medical evidence noting complaints of hip pain and diagnostics conducted on Marshall's hips. For example, the ALJ took note of Marshall's reporting a right hip injury to Dr. Freedberg and Dr. Freedberg initially diagnosing a sprain or strain to the hip pending further testing. The ALJ also noted Dr. Freedberg's finding no acute pathology in a hip MRI[9] though Dr. Freedberg checked yes in response to a question on a form regarding whether Marshall suffered a right hip strain/sprain.

---

[9] Magnetic resonance imaging.

And the ALJ noted Dr. Fadel diagnosed Marshall as suffering from hip pain, but Dr. Fadel also opined that "Marshall's right hip pain was a result of referred pain from the back, and was not ratable."

The ALJ did not assess any impairment ratings related to Marshall's hip, but he had previously noted Dr. Fadel did not consider any hip injury ratable in the summary of evidence. The ALJ also did not expressly state whether Marshall was entitled to medical benefits for any hip injury. There was no separate heading in the ALJ's findings of fact and conclusions of law about hip injury issues – although hip issues were briefly discussed in analysis of low back issues.

In the findings of fact and conclusions of law about the low back injury, the ALJ noted: "Dr. Freedberg's notes demonstrate that he suspected and investigated a hip injury as the reason for Mr. Marshall's right groin and thigh pain, but ruled it out after he prescribed an MRI and injections." He further found that Dr. Freedberg's records and report supported Dr. Fadel's opinion about the low back injury.

Ultimately, the ALJ stated he relied on Dr. Fadel's testimony to find a 14% impairment to the body as a whole resulting from right elbow and low back injuries – thus implicitly also relying on Dr. Fadel's not finding a ratable impairment from a hip injury. But the ALJ did not expressly find whether there was a work-related hip injury and if so, whether such injury was permanent.

In contrast, the ALJ expressly found there was a work-related neck injury but that it was temporary and was resolved by the date of Dr. Fadel's IME (June 17, 2021) – thus resulting in no permanent impairment. Additionally, the ALJ separately found work-related injuries to Marshall's right elbow/wrist and lower back and assessed permanent impairment ratings for these injuries.

Despite the less detailed discussion of hip issues than other bodily conditions, the ALJ's decision as a whole indicates the ALJ found no work-related hip injury based on the medical evidence including Dr. Fadel's and Dr. Freedberg's opinions. And clearly, the ALJ's decision found no permanent impairment resulting from a work-related hip injury. So, we question the need to remand for further findings to resolve allegations of a hip injury.

In sum, the ALJ either failed to make essential findings of fact which Marshall was required to raise in a petition for reconsideration to obtain further relief on hip issues or the ALJ essentially found no work-related hip injury – a finding which Marshall did not challenge by appeal to the Board. Either way, the Board's remand for further discussion of hip issues was improper and must be reversed with directions to reinstate the ALJ's decision.

Further issues raised in the briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of petition for review.

## CONCLUSION

For the reasons stated herein, we AFFIRM that part of the Board's opinion affirming the ALJ's decision to award Marshall benefits, but we REVERSE that part of the Board's opinion remanding for further discussion of hip injury issues and REINSTATE the ALJ's Opinion, Award, and Order as entered in April 2022.

ALL CONCUR.


BRIEF FOR APPELLANT:

Jeremy N. Faulk
Louisville, Kentucky

BRIEF FOR APPELLEE:

Haley S. Stamm
Fort Mitchell, Kentucky